USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Aug. 17, 2015

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------- X
LEVERN BENN,                      :
                                  :
                    Petitioner,   :
                                  :   Nos. 12 Civ. 6487 (JFK)
     - against -                  :        09 Cr. 575 (JFK)
                                  :
UNITED STATES OF AMERICA,         :   **OPINION & ORDER**
                                  :
                    Respondent.   :
---------------------------------- X

APPEARANCES

Petitioner Levern Benn, Pro se

For Respondent United States of America
    Preet Bharara
    United States Attorney, Southern District of New York
        By: Jason A. Masimore

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Petitioner Levern Benn's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, Petitioner's motion is denied.

## I. Background

On January 13, 2010, Benn pled guilty to a charge of conspiracy to distribute and possess with intent to distribute 50 grams and more of crack cocaine, in violation of 21 U.S.C., §§ 846, 812, 841(a)(1), and 841(b)(1)(A). Benn entered his plea pursuant to a plea agreement with the Government. In that agreement, Benn stipulated that the guidelines range, which otherwise would have been 87 to 108 months' imprisonment, was

120 months' imprisonment because of the mandatory minimum required by § 841(b)(1)(A). (Gov't Mem. Ex. 1 at 4.)  Benn also agreed that he would not appeal or collaterally attack by habeas petition "any sentence within or below the Stipulated Guidelines Range set forth above," which, again, was 120 months' imprisonment because of the mandatory minimum. (Id. at 5.)

On June 29, 2010, this Court sentenced Benn to 84 months' imprisonment.  On July 9, 2010, the Government moved pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure to correct Benn's sentence to the mandatory minimum of 120 months' imprisonment stipulated to by Benn in his plea agreement. (Id. Ex. 3.)  On July 13, 2010, this Court granted the motion and imposed the mandatory minimum of 120 months' imprisonment.  On July 22, 2010, Benn directly appealed his sentence, arguing that, because he never admitted to the quantity of narcotics, he was erroneously sentenced to the a mandatory minimum set forth in § 841(b)(1)(A).  The Second Circuit rejected this argument and affirmed this Court's judgment on September 22, 2011. See United States v. Benn, 437 F. App'x 21, 22–23 (2d Cir. 2011).

Benn now challenges the corrected sentence of 120 months' imprisonment on four grounds.  First, Petitioner argues that the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, applies retroactively and should serve to lower his sentence.  Second, he argues that the correction of his sentence

denied him due process and placed him in double jeopardy in violation of the Fifth Amendment.  Third, he argues that his counsel rendered ineffective assistance of counsel by failing to raise the double jeopardy and due process arguments upon Benn's resentencing.  Finally, he asserts that his plea was involuntary because he believed "that his plea would not prevent him from receiving the benefits of the Fair Sentencing Act, after it was made into law." (Benn Petition 6.).

## II. Discussion

### A. Legal Standard

Section 2255 allows a federal prisoner to collaterally attack his conviction or sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." § 2255(a).  Such a collateral attack is therefore reserved "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).  In cases where a petitioner is acting pro se, the Court will interpret the claims set forth by

petitioner liberally, see Marmolejo v. United States, 196 F.3d 377, 378 (2d Cir. 1999), and will "interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

### B. Application

The Court will address each of Petitioner's four arguments. However, because Benn may have waived his ability to collaterally challenge a sentence that is within the guidelines range, the Court turns first to the voluntariness of Benn's waiver.

### 1. The Plea Waiver

Benn's plea agreement with the Government contained a clause where he agreed that he would not bring a § 2255 petition to challenge a sentence within or below the stipulated range, which is 120 months. (Gov't Mem. Ex. 1 at 4–5.) Such a waiver is "presumptively enforceable" and will only be voided if it was not knowing and voluntary, or if it violates certain fundamental rights. United States v. Coston, 737 F.3d 235, 237 (2d Cir. 2013). In assessing whether a habeas corpus waiver is knowing or voluntary, a court is "entitled to rely upon the defendant's sworn statements, made in open court . . . that he understood the consequences of his plea." See United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001); United States v. Forde, Nos. 11 Civ. 8768, 08 Cr. 828, 2012 WL 5205966, at *2 (S.D.N.Y. Oct.

12, 2012). Thus, Benn cannot vitiate his waiver simply by making unsupported allegations that contradict the sworn statements he made at his plea allocution. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); Hernandez, 242 F.3d at 112–13.

Here, Petitioner affirmed that he discussed the plea agreement with his attorney, understood the plea agreement, and had no questions about the agreement. (Plea Tr. 9.) He also confirmed that he understood that he had waived his right to appeal, move to set aside his plea, or attack his conviction by habeas corpus if he was sentenced within the stipulated range of 120 months' imprisonment, which mirrored the mandatory minimum. (Plea Tr. 11–12.) These statements demonstrate that he knowingly and voluntarily pleaded guilty and waived his right to use habeas corpus to collaterally attack his sentence.

Although not asserted by Petitioner, the Court nevertheless considers whether Benn's waiver violated a fundamental right. That inquiry looks to the "nature of the right at issue and whether the sentence was reached in a manner that the plea agreement did not anticipate." United States v. Riggi, 649 F.3d 143, 148 (2d Cir. 2011) (internal quotation marks omitted). Benn's double jeopardy claim, even if successful, does not fall

within the category of fundamental rights that cannot be waived. See United States v. Kurti, 427 F.3d 159, 162 (2d Cir. 2005) ("Generally, the rights afforded by the Double Jeopardy Clause are personal and can be waived by a defendant." (internal quotation marks omitted)); cf. Riggi, 649 F.3d at 147–48 (listing sentences based on race, naturalized status, and the ability to pay restitution as examples of sentences that would void a waiver). Moreover, Benn's sentence was calculated in a manner precisely anticipated by the plea agreement. Thus, the waiver did not violate a fundamental right and is not void on that ground.

To the extent Benn is challenging the validity of his plea, he fairs no better. Benn claims that his guilty plea was not knowing and voluntary because it was made with the understanding that the Fair Sentencing Act would apply retroactively and allow him to receive a lesser sentence. The principal hurdle for Benn is again his plea colloquy with the Court. Indeed, he expressly disclaimed the existence of any "promise or statement by anybody to the effect that [he] would get leniency or special treatment or consideration." (Plea Tr. 14.) Moreover, he affirmed that he understood that "there is a mandatory minimum sentence of 10 years in prison and a maximum sentence of life imprisonment." (Plea Tr. 10.) He also affirmed that he understood that "because there is a mandatory minimum of 10 years, the

guidelines range in [his] case is 120 months." (Plea Tr. 12.) He asserted that he was pleading guilty of his own free will. (Plea Tr. 13.)  The Court asked Benn if he had any questions "about the charge in the case or the consequences of pleading guilty." (Plea Tr. 15.)  Benn was not shy and asked at least three questions.  First, he asked, "How did the government come up with 50 grams?" (Plea Tr. 16.)  He also asked about the definition of a conspiracy. (Plea Tr. 17.)  Third, he asked why he was only pleading to count one. (Plea Tr. 18.)  After the Court answered Benn's questions, he pled guilty without ever inquiring about the Fair Sentencing Act or its retroactivity. As mentioned above, the Court is entitled to rely on Benn's own sworn statements.

Furthermore, another consideration convinces the Court that it was no accident that Benn failed to mention the Fair Sentencing Act during his plea when he accepted the mandatory minimum in the plea agreement:  the Act was not signed into law until August 3, 2010, nearly seven months after Benn pled guilty.  At the time of Benn's plea in January 2010, the Fair Sentencing Act had not even advanced out of committee in the Senate.  Indeed, the Fair Sentencing Act did not pass the Senate until March 17, 2010 and did not pass the House until July 28, 2010.  Benn recognizes this in his petition, when he explains that he believed his plea "would not prevent him from receiving

the benefits of the Fair Sentencing Act, <u>after</u> it was made into law." (Benn Petition 6 (emphasis added).)  But at the time he pled guilty there was no guarantee that it would ever even become law.  Again, Benn made no mention of the possibility that his sentence would be reduced because of a bill still winding its way through a Senate committee.

The Court notes that Petitioner's claims would not be barred to the extent that Petitioner asserts that the ineffective assistance of his counsel rendered his plea and waiver not knowing and voluntary. <u>Anim v. United States</u>, 12 Civ. 3426, 2013 WL 4056211, at *5–6 (S.D.N.Y. Aug. 12, 2013).  But Benn does not claim ineffective assistance of counsel as to the plea agreement.  Indeed, he expressly notes that his claim as to the Fair Sentencing Act is "not under 'Ineffective Assistance of Counsel.'" (Benn Mem. 5.)

Petitioner's ineffective assistance of counsel claims only attack events occurring after he entered into the plea agreement, specifically his resentencing.  Counsel's actions at resentencing could not render his plea unknowing and involuntary. <u>See</u> <u>United States v. Williams</u>, 448 F. App'x 156, 157 (2d Cir. 2012) ("A defendant may not 'dress up' a challenge to the correctness of his sentence as a Sixth Amendment claim for ineffective assistance of counsel by arguing the deficiency of his counsel's performance 'not at the time of the plea, but

at sentencing.'" (internal quotation marks omitted)); <u>United States v. Djelevic</u>, 161 F.3d 104, 107 (2d Cir. 1998) ("If we were to allow a claim of ineffective assistance of counsel at sentencing as a means of circumventing plain language in a waiver agreement, the waiver of appeal provision would be rendered meaningless.  This we decline to do."); <u>Abramo v. United States</u>, No. 12 Civ. 1803, 2014 WL 1171735, at *10 (S.D.N.Y. Mar. 21, 2014) ("The claim of ineffective assistance must relate to the plea process and be meritorious to void an otherwise valid waiver.").  Moreover, as discussed later, there is no merit to the ineffective assistance of counsel claims that Benn does raise.

To the extent that any of his claims could liberally be construed as an ineffective assistance of counsel claim at the time of the plea, the Court would also reject it because Benn cannot establish prejudice.  He has not alleged, much less shown, that he would have insisted on going to trial instead of taking the plea or that he could have negotiated a more favorable plea. <u>See</u> <u>Kovacs v. United States</u>, 744 F.3d 44, 51–53 (2d Cir. 2014); <u>see also</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 59–60 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

**2. The Fair Sentencing Act of 2010 Does Not Apply Retroactively**

Turning to Benn's substantive arguments, he argues that the Fair Sentencing Act of 2010 should apply to him so that his sentence is reduced.  However, as recognized by Benn, the Supreme Court's decision in Dorsey v. United States, 132 S. Ct. 2321 (2012), "undermined" this argument. (Benn Reply 2.)  In Dorsey, the Supreme Court held that the Fair Sentencing Act applied to defendants that committed crimes before August 3, 2010, when the Act became law, but were sentenced after enactment. See 132 S. Ct. at 2326.  In doing so, the Supreme Court expressly considered the potential disparities between such defendants and those, like Benn, who were sentenced before August 3, 2010. See id at 2335.  Those potential disparities, however, did not make a "critical difference." See id.

Though Dorsey may have only "undermined" Benn's argument, the Second Circuit has buried it.  Prior to Dorsey, the Second Circuit had already held that the Fair Sentencing Act did not apply to defendants, like Benn, who were convicted and sentenced before it became law. See United States v. Diaz, 627 F.3d 930, 931 (2d Cir. 2010) (per curiam).  Post-Dorsey, the Second Circuit has affirmed that holding. See United States v. Rowley, 543 F. App'x 104, 105 (2d Cir. 2013) ("The FSA does not apply retroactively to defendants, such as Rowley, who were convicted and sentenced prior to August 3, 2010."); United States v.

Johnson, 732 F.3d 109, 115-16 (2d Cir. 2013); United States v. Humphries, 502 F. App'x 46, 47 (2d Cir. 2012). The other circuits are in agreement. See, e.g., United States v. Blewett, 746 F.3d 647, 652 (6th Cir. 2013) (en banc) (collecting cases); United States v. Reeves, 717 F.3d 647, 650-51 (8th Cir. 2013) (collecting cases). While the Court is sympathetic to Benn's predicament, the Fair Sentencing Act simply does not apply to him.

Nor is he eligible for a sentencing reduction under 18 U.S.C. § 3582(c)(2). See United States v. Williams, 551 F.3d 182, 185 (2d Cir. 2009) ("Once the mandatory minimum applied, Lewis's sentence was no longer 'based on a sentencing range that has subsequently been lowered by the Sentencing Commission.'" (quoting § 3582(c)(2)); United States v. Sanchez, --- F. Supp. 3d ----, 2015 WL 1623809, at *2 (S.D.N.Y. 2015) ("The fact that Sanchez's sentence was based on the mandatory statutory minimum removes this case from the ambit of § 3582(c)(2) and limits the Court's ability to reduce Sanchez's sentence."); United States v. Morant-Cordero, No. 02 Cr. 1388, 2012 WL 928098, at *1 (S.D.N.Y. Mar. 19, 2012) ("Here, § 3582(c)(2) does not allow for a reduced sentence because Defendant's sentence was based on the statutory mandatory minimum and not a Guideline that was subsequently amended.").

The Court notes, however, as it did at resentencing, that it believes the seven year sentence originally imposed would be adequate and that this case demonstrates one of the problems with mandatory minimums. (Resentencing Tr. 7-8.)  As this Court has done previously in another matter, it recommends that the Executive Branch reconsider the appropriateness of Benn's sentence. See Gargano v. United States, Nos. 12 Civ. 6503, 02 Cr. 516, 2014 WL 1725736, at *6 (S.D.N.Y. Apr. 30, 2014).

### 3. Double Jeopardy and Due Process

Next, Benn argues that his resentencing to the mandatory minimum placed him in double jeopardy and violated his due process rights.  But "the Double Jeopardy Clause's requirement that a defendant only be punished once for a particular crime does not mean that this punishment cannot be modified or extended." United States v. Vargas, 564 F.3d 618, 624 (2d Cir. 2009) (internal quotation marks omitted).  Indeed, a sentence may be increased to conform to a statutory requirement without offending the Constitution, so long as the defendant did not have a legitimate expectation of finality in the sentence. See United States v. Rosario, 386 F.3d 166, 170-71 (2d Cir. 2004); see also Bozza v. United States, 330 U.S. 160, 167 (1947) ("In this case the court only set aside what it had no authority to do, and substituted directions required by the law to be done upon the conviction of the offender.  It did not twice put

-12-

petitioner in jeopardy for the same offense.  The sentence as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense." (citation, footnote, and internal quotation marks omitted)).

Benn had no expectation in the finality of the sentence this Court initially imposed on June 29, 2010.  First, this Court did not have the statutory authority to impose the initial sentence because it was below the mandatory minimum.  Benn could not have a legitimate expectation of finality in what was an illegal sentence. See Williams v. Travis, 143 F.3d 98, 99 (2d Cir. 1998) (holding that there was no double jeopardy violation where defendant had "no legitimate expectation of finality in his original sentence, which was not authorized by law, was appealable by the government, and was modified only a week after it was imposed."); Todd v. Dolce, No. 13 Civ. 5421, 2015 WL 4488455, at *10 (E.D.N.Y. July 22, 2015) ("A defendant does not have a legitimate expectation of finality in an illegal sentence.")

Second, and along the same the lines, this corrected sentence was the one Benn expressly agreed to in his plea agreement.  He therefore could not legitimately expect that a lower sentence would have remained final. See United States v. Rico, 902 F.2d 1065, 1068–69 (2d Cir. 1990) (affirming increase

of sentence to conform with plea agreement), <u>superseded on other grounds by rule</u>, Fed. R. Crim. P. 35.

Third, the Federal Rules of Criminal Procedure specifically provides fourteen days for the correction of sentence imposed as a result of "clear error." <u>See</u> Fed. R. Crim. P. 35(a). The Court resentenced Benn within those fourteen days. Benn could not have an expectation in finality during the time when the Court is expressly allowed to modify a sentence for clear error, particularly where, as here, the Government moved to modify the sentence only ten days after the sentence.

This Court imposed the sentenced commanded by statute and set forth in the plea agreement. It followed the procedure provided by the Federal Rules of Criminal Procedure. There was thus no violation of double jeopardy, and because Benn's due process argument is inextricably intertwined with his double jeopardy argument, there was no violation of due process either.

### 4. Ineffective Assistance

Finally, Benn claims that his counsel rendered ineffective assistance for failing to assert a double jeopardy or due process objection to Benn's corrected sentence. To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate that counsel's (1) "representation fell below an objective level of reasonableness" and (2) "deficient

performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

As discussed above there is no merit to Benn's due process or double jeopardy arguments, and thus counsel's objections would have been frivolous.  Counsel's failure to raise a meritless argument cannot be the basis for an ineffective assistance of counsel claim. See United States v. Regalado, 518 F.3d 143, 149 n.3 (2d Cir. 2008) ("Failure to make a meritless argument does not amount to ineffective assistance." (alteration and internal quotation marks omitted); Waldheim-Toron v. United States, 631 F. Supp. 2d 397, 398 (S.D.N.Y. 2009).

### III. Conclusion

The Court has considered all of Petitioner's arguments and has determined that they are without merit.  Accordingly, Petitioner's motion to vacate, set aside or correct his sentence pursuant to § 2255 is denied.

The Court certifies, pursuant to 28 U.S.C. § 1951(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Furthermore, as the Petitioner makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253.

**SO ORDERED.**

Dated:   New York, New York
         August 17, 2015

                                    _____
                                         John F. Keenan
                                    United States District Judge